1

2

3

4

5

6

7

8

9                          IN THE UNITED STATES DISTRICT COURT

10                       FOR THE EASTERN DISTRICT OF CALIFORNIA

11  RODNEI FRAZIER,

12              Plaintiff,              No. CIV S-04-0115 MCE PAN P

13        vs.

14  DR. JOHN KOFOED,[1]             ORDER AND

15            Defendant.             FINDINGS & RECOMMENDATIONS

16  _____/

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18  42 U.S.C. § 1983.  Plaintiff claims that defendant Kofoed violated his rights under the Eighth

19  Amendment by acting with deliberate indifference to his serious medical need for treatment of

20  complete neuropathy of plaintiff's leg and foot, including failure to provide follow-up medical

21  care, and by allowing plaintiff's injury to progress to a 90 degree knee lock, requiring another

22  surgery.  Plaintiff has also included a pendent state law negligence claim arising from the same

23  facts.  This matter is before the court on defendant's motion for summary judgment.[2]

24  ⎯⎯⎯⎯⎯⎯⎯

25          [1] Defendant Dr. Oh was dismissed from this action by order filed May 19, 2006.

26          [2] On March 27, 2006, plaintiff was directed to file complete copies of documents
plaintiff appended to his opposition and reply.  After receiving an extension of time, and seeking

1

1    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

2         Summary judgment is appropriate when it is demonstrated that there exists "no

3    genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4    matter of law."  Fed. R. Civ. P. 56(c).

5         Under summary judgment practice, the moving party

6         always bears the initial responsibility of informing the district court
          of the basis for its motion, and identifying those portions of "the
7         pleadings, depositions, answers to interrogatories, and admissions
          on file, together with the affidavits, if any," which it believes
8         demonstrate the absence of a genuine issue of material fact.

9    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13   after adequate time for discovery and upon motion, against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on which that

15   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16   concerning an essential element of the nonmoving party's case necessarily renders all other facts

17   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18   whatever is before the district court demonstrates that the standard for entry of summary

19   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20        If the moving party meets its initial responsibility, the burden then shifts to the

21   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23   establish the existence of this factual dispute, the opposing party may not rely upon the

24   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25   ───────────────────

26   another, plaintiff filed the documents on June 19, 2006.  Because plaintiff has now complied
     with the order, the court will deny plaintiff's June 12, 2006 motion for second extension of time.

2

1  form of affidavits, and/or admissible discovery material, in support of its contention that the

2  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

3  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

4  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

5  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

6  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

7  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

8  1436 (9th Cir. 1987).

9          In the endeavor to establish the existence of a factual dispute, the opposing party

10  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

11  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

12  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

13  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

14  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

15  committee's note on 1963 amendments).

16          In resolving the summary judgment motion, the court examines the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

19  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

20  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

21  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

22  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

23  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

24  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

25  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

26  /////

1   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

3           On June 10, 2004, the court advised plaintiff of the requirements for opposing a

4   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

5   F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v.

6   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

7                                ANALYSIS

8   I. Facts[3]

9           Plaintiff is an inmate incarcerated at California Medical Facility ("CMF"),

10  Vacaville, California.  Plaintiff suffers from sickle cell anemia, which caused damage to both

11  hips sufficient to require bilateral hip replacement surgery.  On June 9, 1997, Dr. Oh performed

12  surgery to replace plaintiff's left hip.  During that surgery, plaintiff's sciatic nerve was damaged.

13  Dr. Kofoed did not perform or assist in plaintiff's June 9, 1997 hip surgery.  The last time Dr. Oh

14  treated plaintiff was on June 26, 1997.

15          Dr. John Kofoed, M.D. is an orthopedic surgeon who is an independent contractor

16  with the California Department of Corrections (CDC).  Dr. Kofoed is also employed in private

17  practice by The Specialities Orthopedics Medical Corporation.  Dr. Kofoed conducts a weekly

18  orthopedic clinic on Monday mornings and performs surgery on Tuesday mornings at CMF.

19          Dr. Kofoed is an independent contractor with the CDC.  Dr. Kofoed is under

20  contract to "perform examinations, make diagnoses, issue prescriptions, recommend treatment,

21  and request surgery."  An independent medical review board at CMF decides whether there is a

22  medical necessity for any surgery recommended for an inmate by a contract doctor.[4]  As an

23

24      [3] Except as otherwise noted, these facts are not in dispute.

25      [4] The Medical Authorization Review (MAR) Committee is established within each
    correctional treatment center's (CTC) service area, and is composed of staff physician
    representatives from each institution within the service area.  (Cal. Admin. Code., tit. 15,
26  § 3352.)  The MAR Committee meets to approve or disapprove requests for medical services,

                                        4

1   independent contractor, Dr. Kofoed does not have the power to control the surgical schedules of

2   inmates which he has recommended for surgery, nor to control or insure that inmate patients

3   attend their physical therapy appointments.

4          Dr. Kofoed first examined plaintiff on August 18, 1997.  Upon examination, Dr.

5   Kofoed diagnosed plaintiff with "complete sciatic neuropathy."  There was no medical treatment

6   reasonably available which could have been performed by Dr. Kofoed to repair the damage to

7   plaintiff's left sciatic nerve.[5]  Dr. Kofoed treated plaintiff by ordering a nerve conduction study,

8   EMG test, and left knee x-ray.  Plaintiff was ordered to continue with physical therapy treatments

9   3 to 4 days per week to help increase the range of motion to plaintiff's knee.  Physical therapy

10  consisted of whirlpool bath, exercise bicycle, gait training, range of motion/strength exercise,

11  education and a home exercise program.  Dr. Kofoed also referred plaintiff to a neurologist and

12  physical medicine specialist for pain management.

13         Dr. Kofoed was aware plaintiff was in pain.  (Pl.'s Opp'n, Ex. A.[6])

14  /////

15  ────────────────

16  and approved cases are forwarded with supporting documentation to the Health Care Review
    (HCR) committee.  (Id.)  The HCR Committee, which minimally consists of two Assistant
17  Deputy Directors, a Chief Medical Officer, and two physicians, then meets to approve or deny
    services approved by the MAR Committee.  (Id. at § 3352.1.)

18         [5]  Plaintiff attempts to dispute this fact by stating "Dr. Kofoed did not see plaintiff for 14
    months to see if there was any reasonable treatment for plaintiff's sciatic nerve damage and
19  complete neuropathy."  (Pl.'s Opp'n at 9.)  However, Dr. Kofoed determined in his examination
    of plaintiff on August 18, 1997 that "[t]here was no medical treatment reasonably available
20  which could have been performed by Dr. Kofoed to repair the damage to plaintiff's left sciatic
    nerve."  In other words, the damage to plaintiff's left sciatic nerve was permanent and could not
21  be repaired by Dr. Kofoed.

22         [6]  Plaintiff appended two documents as Exhibit A to his opposition, page 3 from a
    declaration by Dr. Kofoed, and page 8 from Points and Authorities in Support of Motion for
23  Summary Judgment.  These two pages were taken from documents filed on September 28, 2001
    in Frazier v. California Department of Corrections, et al., CIV S-00-0022 LKK JFM P
24  (defendants' motion for summary judgment granted based on plaintiff's failure to exhaust
    administrative remedies prior to suit; case dismissed without prejudice).  (Pl.'s June 19, 2006
25  Response to court order.)  A court may take judicial notice of court records.  See MGIC Indem.
    Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119
26  (9th Cir. 1980).

1        Dr. Kofoed did not see plaintiff again until October 14, 1998.[7]

2        Plaintiff saw other health care providers at CMF between August 18, 1997 and

3 October 14, 1998.  For example, on August 28, 1997, E.R. Johnson, M.D., a physical medicine

4 specialist, signed a Referring Physician's Report that stated:

> 5 Severe pain (L) foot & leg 2∘ Reflex Sympathetic Dystrophy
> ["RSD"] Request has been made for urgent (L) lumbar sympathetic
> 6 block.  Please eval[uate] re: any other recommendations.

7 Dr. Johnson referred plaintiff to neurology at CMF.  (Pl.'s Opp'n, Ex. D, at 23.)

8        On September 4, 1997, plaintiff presented at the B-1 Clinic for follow-up for his

9 left hip pain.  (Pl.'s Opp'n, Ex. D, at 25.)  The chart reflects plaintiff was approved for a

10 sympathetic block trial.  (Id.)  Plaintiff reported he had tried Elavil before but it didn't work and

11 had bad side effects.  The chart reflects plaintiff can't tolerate Tylenol/Codeine, Morphine or

12 Percodan.  (Id.)  Plaintiff's prescription for 10 mg Oxycodone for severe pain was renewed.  (Id.)

13        On September 4, 1997, plaintiff was seen by Dr. Parker, a surgeon at CMF, who

14 also diagnosed plaintiff with RSD and noted "for Eval. by D. Johe, much less swollen now – for

15 block for RSD."  (Pl.'s Opp'n, Ex. D, at 24.)

16        On September 5, 1997, neurologist Dr. Jaber performed a left sympathetic nerve

17 block to relieve plaintiff's discomfort of inflamed nerves.  (September 28, 2001 Decl. of Dr.

18 Kofoed, at 3 & Ex. C.[8])

19        On September 7, 1997, John H. Friend, M.D., a neurologist, reported the results of

20 the nerve conduction studies to CMF and confirmed Dr. Kofoed's diagnosis of complete

21 neuropathy of the sciatic nerve distribution.  (Pl.'s Opp'n, Ex. B.)  Dr. Friend recommended

22 /////

---

24     [7] Plaintiff approximates the time frame between August 18, 1997, the first day Dr. Kofoed examined plaintiff and October 14, 1998, the next time Dr. Kofoed examined plaintiff, as a period of fourteen months, by rounding the total up by about four days.

26     [8] This information is located in Dr. Kofoed's declaration filed September 28, 2001, at 3 & Ex. C, in CIV S-00-0022 LKK JFM P.  (See n.5 infra.)

1  plaintiff be "scheduled for repeat EMG testing of the common peroneal and posterior tibial nerve

2  distributions for evidence of regenerated motor activity in approximately six weeks." (Id.)

3          Plaintiff was treated in the clinic on September 16, 1997 for his complaints of leg

4  cramps and pain.  (Pl.'s Opp'n, Ex. D, at 26.)  Dr. J. Johe referred plaintiff back to Dr. Johnson

5  stating plaintiff "known to you.  Severe shooting pain and loss of sciatic nerve function below

6  knee.  No relief from trial of Lumbar Sympathetic Block.  Please reevaluate patient."  (Id. at 26.)

7          On October 23, 1997, plaintiff was examined by Dr. Johnson, who ordered an x-

8  ray of plaintiff's hip, physical therapy twice a week for four weeks, Oxycodone 10 mg for severe

9  pain and a neurology consult.  (Id. at 27.)

10          Plaintiff was treated by various other health professionals between October 23,

11  1997 and October 14, 1998 and prescribed various pain medications, including Oxycodone,

12  Toradal and Demerol.  (Pl's Opp'n, Ex. D.)

13          From August 14, 1997 to February 9, 1998, plaintiff had 50 scheduled physical

14  therapy appointments, but did not go to 26 of the appointments.  Dr. Kofoed maintains that

15  plaintiff was dropped from the physical therapy program on February 9, 1998 for failure to show

16  for six scheduled appointments in a row even though plaintiff was authorized to attend physical

17  therapy until August 5, 1999.  (September 21, 2005 Kofoed Decl. (hereafter "Kofoed Decl."[9]) at

18  12. )  Plaintiff, however, has provided a memo from Nate Hohsfield, a CMF physical therapist

19  with ten years' experience, who claims in his professional opinion it was plaintiff's pain that

20  prevented plaintiff from participating in physical therapy.  (Pl.'s Opp'n, Ex. H.)  Mr. Hohsfield

21  also opined that the reason plaintiff was in a wheelchair so long after surgery was due to

22  plaintiff's pain.  (Id.)

23  /////

24  /////

25  ─────────────

26      [9]  All references to "Kofoed Decl." without reference to a date refer to Dr. Kofoed's
    Declaration filed in the instant action on September 21, 2005.

On September 18, 1998, plaintiff was seen by Dr. L.A. Shabayz, who noted plaintiff's left knee contracture and referred plaintiff to see Dr. Kofoed in Orthopedics.  (Pl.'s Opp'n, Ex. D at 39.)

On October 14, 1998, Dr. Kofoed examined plaintiff's left knee, ordered x-rays and recommended that arthroscopic surgery be performed to plaintiff's left knee.

By October 14, 1998, plaintiff had a left knee contracture (locked at 90 degrees), which could only be corrected by surgery.  Plaintiff contends the contracture was caused by severe pain and by Dr. Kofoed not seeing plaintiff from August 18, 1997 until October 19, 1998.  (Pl.'s Opp'n at 9.)  In his deposition, plaintiff stated he had a knee contracture as a result of the sciatic nerve damage.  (Pl.'s Dep. Tr. at 28.)  On the consultation form, Dr. Kofoed stated the rationale for the treatment was "(L) knee contracture due to sciatic nerve injury from prior total hip replacement."  (Pl.'s Opp'n, Ex. D at 39.)  In his declaration submitted herein Dr. Kofoed opined that the contracture was caused by the lack of exercise and the failure of plaintiff's left knee to positively respond to physical therapy and a home exercise program.  (Kofoed Decl. at 12.)

Plaintiff was seen by other health care providers between October 14, 1998 and March 9, 1999.  (Pl.'s Opp'n, Ex. D, at 40-42.)

Dr. Kofoed performed surgery on plaintiff's left knee on March 9, 1999.  The surgery was successful as it released plaintiff's left leg from a 90 degree lock.  Plaintiff's "left leg was able to extend from 90 degrees to a straight position, 5 degrees short of full extension. . . . [Plaintiff] is now able to freely ambulate and walk without any assistance of crutches or a cane."  (September 28, 2001 Kofoed Decl. at 7.[10])

/////

/////

---

[10]  This information is located in Dr. Kofoed's declaration filed September 28, 2001, at 7, in CIV S-00-0022 LKK JFM P.  (See n.5 infra.)

8

1    Dr. Kofoed opines that:

2    Based on information available to Dr. Kofoed, there was no
3    medical need to perform surgery on plaintiff's left knee prior to
     October 14, 1998, because plaintiff's knee contracture was being
     properly treated by a physical therapy regimen which was designed
4    to increase mobility to his left knee.

5    (Kofoed Decl. at 13.)  Dr. Kofoed opines that the delay from October 14, 1998, when he first

6    recommended surgery, to the March 9, 1999 surgery did not increase plaintiff's left knee

7    contracture, or cause any additional damage to plaintiff's sciatic nerve, foot, leg or left knee.

8    (Kofoed Decl. at 13.)  Plaintiff, however, contends Dr. Kofoed did not see plaintiff between

9    August 20, 1997 and October 13, 1998 or between October 15, 1998 and May 8, 1999, to

10   determine whether plaintiff needed surgery or not.  (Pl.'s Opp'n at 9.)  Plaintiff further contends

11   that the delay caused plaintiff to suffer pain.  (Id.)

12   Dr. Kofoed states he treated plaintiff in good faith and did not take any action

13   intended to harm or cause additional pain to plaintiff.  (Kofoed Decl. at 13.)  Dr. Kofoed further

14   contends he provided plaintiff the appropriate diagnosis and treatment which was consistent with

15   the degree of knowledge and skill ordinarily possessed and exercised by members of Dr.

16   Kofoed's profession in similar circumstances.  (Id.)  Plaintiff, on the other hand, contends that

17   the fact that Dr. Kofoed did not examine or treat plaintiff for a period of fourteen months and

18   specifically failed to follow-up on tests and other treatments ordered by Dr. Kofoed demonstrates

19   Dr. Kofoed's deliberate indifference to plaintiff's serious medical needs.  (Pl.'s Opp'n at 9.)

20   Moreover, plaintiff contends that Dr. Kofoed's failure to provide plaintiff with follow-up care

21   was not consistent with the degree of knowledge and skill ordinarily possessed and exercised by

22   members of Dr. Kofoed's profession in similar circumstances.  (Id.)

23   Finally, plaintiff disputes Dr. Kofoed's statement that at no time did Dr. Kofoed

24   fail to perform a medical procedure on plaintiff which should have been performed because Dr.

25   Kofoed did not examine plaintiff during those fourteen months to see what medical procedures

26   could have been performed.

9

II.  Plaintiff's Claims

In his complaint, plaintiff states that the damage to his sciatic nerve caused him severe pain and partial paralysis to his left leg and foot.  (Id. at 3.)  Plaintiff claims that defendant Kofoed violated his rights under the Eighth Amendment by acting with deliberate indifference to his serious medical needs by failing to provide any follow up medical care following his release from the hospital.  (Id. at 4.)  Plaintiff also claims defendant Kofoed was deliberately indifferent by failing to perform the knee release surgery for almost five months after Dr. Kofoed examined plaintiff on October 14, 1998.  (Id.)  Plaintiff contends his left foot and knee are crippled with permanent damage to plaintiff's sciatic nerve.  (Id.)

Defendant Kofoed seeks summary judgment on the ground that there is no evidence he was deliberately indifferent to plaintiff's need for treatment.

In order to prevail on his Eighth Amendment claim plaintiff must prove that he had a "serious medical need" and that defendants acted with "deliberate indifference" to that need.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle, 429 U.S. at 104).  Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Whether a defendant had requisite knowledge of a substantial risk is a question of fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious.  Farmer, 511 U.S. at 842.  While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely

1  refused to verify underlying facts or declined to confirm inferences that he strongly suspected to

2  be true.  Id.  Deliberate indifference specifically to medical needs "may be shown by

3  circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually

4  knew of a risk of harm."  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

5            "Prison officials are deliberately indifferent to a prisoner's serious medical needs

6  when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296

7  F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).  However, delay

8  in providing medical treatment to a prisoner does not constitute deliberate indifference unless the

9  delay causes substantial harm.  Shapely v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404 (9th

10  Cir. 1985).  Additionally, "a plaintiff's showing of nothing more than 'a difference of medical

11  opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a

12  matter of law, to establish deliberate indifference."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th

13  Cir. 1996) (as amended) (1996).  In order to prevail on a claim involving choices between

14  alternative courses of treatment, a plaintiff must show that the course of treatment the doctors

15  chose was medically unacceptable under the circumstances and that they chose this course in

16  conscious disregard of an excessive risk to the plaintiff's health.  See Toguchi v. Chung, 391 F.3d

17  1051, 1058 (9th Cir.2004); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996) (citing Farmer,

18  551 U.S. at 837), cert. denied, 519 U.S. 1029 (1996).

19            Plaintiff's claim against defendant Kofoed arises out of said defendant's failure to

20  provide plaintiff with follow-up care from August 18, 1997 to October 14, 1998 and for delaying

21  surgical intervention on plaintiff's contracture to his left knee once he was seen by Dr. Kofoed on

22  October 14, 1998.  Plaintiff was not provided surgery on his knee until March 9, 1999.

23            Defendant Kofoed does not dispute that he did not see plaintiff for these periods

24  of time, but contends that plaintiff was not in need of treatment by Dr. Kofoed because he was

25  under the care of other doctors at the prison and had been prescribed a prescription of physical

26  therapy and referred to a neurologist for further tests and pain regulation.  Dr. Kofoed also argues

1   that plaintiff suffered no further injury to his knee by virtue of the five month delay prior to

2   treatment of the knee contracture.  Thus, defendant Kofoed argues his actions did not constitute

3   deliberate indifference to a serious medical need and there was no medical procedure he failed to

4   provide.

5           The medical records provided by plaintiff demonstrate plaintiff was provided

6   medical care from August 18, 1997 to October 14, 1998.  Plaintiff was referred to physical

7   therapy, a neurologist and a physical medicine specialist for pain management.  The medical

8   records provided by plaintiff demonstrate that these orders were carried out.  Plaintiff was seen

9   by neurologist Dr. Friend for a nerve conduction study.  Plaintiff was given a sympathetic block

10   and he was prescribed pain medications in an effort to stop the pain.  While it is common

11   knowledge that damage to one's sciatic nerve results in severe pain, and it is undisputed that Dr.

12   Kofoed was aware plaintiff was in pain, plaintiff has provided no evidence to demonstrate that

13   Dr. Kofoed, an orthopedic surgeon, was responsible to treat plaintiff for pain.  Indeed, many

14   orthopedic surgeons refuse to administer pain medications and require patients to obtain them

15   from their general physicians, often to avoid medication interaction problems.  Dr. Kofoed

16   appropriately referred plaintiff to other doctors for pain management.

17           Moreover, plaintiff has provided no evidence to support his theory that there was

18   some alternative treatment Dr. Kofoed could have provided.  Indeed, Dr. Kofoed found plaintiff

19   had suffered complete neuropathy to his sciatic nerve and there was no medical treatment

20   reasonably available which could have been performed by Dr. Kofoed to repair the damage to

21   plaintiff's left sciatic nerve.  Even if repair to the nerve had been possible, that repair would have

22   been referred to a neurologist, not to an orthopedic surgeon.  Dr. Kofoed referred plaintiff to a

23   neurologist and plaintiff was subsequently seen by a neurologist.  The neurologist, Dr. Friend,

24   confirmed the complete neuropathy diagnosis.  Plaintiff testified at his deposition that Dr. Friend

25   told plaintiff on September 7, 1997: "You're injured.  All I can do is keep you comfortable with

26   /////

1    pain meds . . . you know.  There's nothing too much more that I can do.  Your [sciatic nerve]

2    injury is too extensive."  (Pl.'s Dep. Tr. at 33.)[11]

3              The eventual knee lock sustained by plaintiff is more problematic.  Arguably, an

4    orthopedic surgeon would know that failure to attend physical therapy or maintain a home

5    exercise program would cause a patient with extensive sciatic nerve injury to eventually sustain a

6    knee lock.  However, plaintiff presents no evidence that Dr. Kofoed knew plaintiff was not going

7    to physical therapy or that plaintiff was sustaining increasing reductions to his range of motion in

8    his left leg.  Plaintiff has presented no evidence that he requested to see Dr. Kofoed but was

9    refused, or that he presented to medical clinic with complaints of knee contracture prior to

10   September 18, 1998.

11             Plaintiff has presented no evidence that he requested physical therapy to notify Dr.

12   Kofoed that plaintiff was in too much pain to perform the physical therapy ordered.  Although

13   plaintiff has provided a statement by physical therapist Nate Hohsfield, dated November 29,

14   2001, that plaintiff's inability to perform physical therapy was due to plaintiff's pain level, Mr.

15   Hohsfield did not state he had relayed this information to Dr. Kofoed or any other medical

16   professional in an effort to control plaintiff's pain so that he could participate in physical therapy.

17             Dr. Kofoed, on the other hand, stated he had no information prior to October 14,

18   1998 that plaintiff's left knee required surgery, because plaintiff was being treated by physical

19   therapy designed to increase mobility to plaintiff's left knee.  Dr. Kofoed confirmed that the

20   physical therapy records of October 20, 1997 showed plaintiff had a 90 degree range of motion in

21   the left knee which was being treated three to four days a week by physical therapy and exercise

22   he was to perform at home.  (September 28, 2001 Kofoed Decl. at 6.[12])  Even if Dr. Kofoed had

23

24        [11]  This information is located in defendants' points and authorities in support of motion
     for summary judgment filed September 28, 2001, at 8, in CIV S-00-0022 LKK JFM P.  (See n.5
25   infra.)

26        [12]  This information is located in Dr. Kofoed's declaration filed September 28, 2001, at 6,
     in CIV S-00-0022 LKK JFM P.  (See n.5 infra.)

1   reviewed plaintiff's medical records during this time, they would not have disclosed the fact that

2   plaintiff's knee was starting to lock up.  Because plaintiff did not participate in physical therapy

3   due to his pain, there were no physical therapy records to reflect a gradual contracture of his

4   knee.  There is no evidence that plaintiff presented at medical clinic to complain of such

5   contracture until September 18, 1998.  The contracture appears to be the result of a gradual lack

6   of activity because the degree of lock in plaintiff's knee did not increase between October 14,

7   1998, when Dr. Kofoed first diagnosed the lock and March 9, 1999, when the lock was released

8   by surgery.  There is no evidence that Dr. Kofoed knew plaintiff had a serious medical need for

9   an immediate orthopedic consultation prior to September 18, 1998.

10          Thus, there is no evidence in the record that Dr. Kofoed would have performed

11  the surgery at some point prior to October 14, 1998, even if he had been informed of plaintiff's

12  failure to attend physical therapy.  On this record, the court cannot find that Dr. Kofoed was

13  deliberately indifferent to plaintiff's serious medical needs from October 1997 to October 14,

14  1998.

15          Finally, there was an almost five month delay from October 14, 1998 when Dr.

16  Kofoed was made aware of the contracture, to the surgery on March 9, 1999 when the lock was

17  released.  However, plaintiff has provided no evidence that this delay was caused by the

18  deliberate indifference of Dr. Kofoed.  It is undisputed that all surgeries must first be approved

19  by the MAR.

20          Moreover, plaintiff's evidence is insufficient to show that any delay in receiving

21  the surgery caused him substantial harm.  Plaintiff provided no evidence that the knee lock

22  worsened from the date of diagnosis to the date of surgery.  While plaintiff did state that he

23  experienced pain during the five month period of delay, the undisputed evidence shows he was

24  continuing to receive Oxycodone for pain.  (Pl.'s Opp'n, Ex. D, at 42.)  Moreover, plaintiff has

25  failed to demonstrate that the pain he suffered was a direct result of the knee lock rather than

26  from the injury to his sciatic nerve or his sickle cell anemia.  Dr. Kofoed opined that the delay in

1   surgery did not increase plaintiff's left knee contracture or cause any additional damage to

2   plaintiff's sciatic nerve, foot, leg or left knee.  Plaintiff has failed to provide any medical

3   evidence to the contrary.  This court finds that plaintiff has not presented evidence sufficient to

4   create a triable issue of material fact as to whether defendant Dr. Kofoed deliberately delayed the

5   surgical repair of his knee lock.

6          For all of the foregoing reasons, this court finds that there is no triable issue of

7   material fact as to whether defendant Kofoed acted with deliberate indifference to plaintiff's

8   serious medical needs, and this court further finds that defendant Kofoed is entitled to summary

9   judgment on plaintiff's Eighth Amendment claim.  Since plaintiff's constitutional claims are

10  without merit, the court should decline to exercise supplemental jurisdiction over plaintiff's state

11  law negligence claims against Dr. Kofoed as well.  See 28 U.S.C. § 1367(c)(3).

12         On March 8, 2006, plaintiff also filed a motion for summary judgment.  In light of

13  the above findings and recommendations, this court will also recommend that plaintiff's motion

14  be denied.

15         IT IS ORDERED that plaintiff's June 12, 2006 motion for extension is denied;

16  and

17         IT IS HEREBY RECOMMENDED that:

18         1.  Defendant Kofoed's December 21, 2005 motion for summary judgment be

19  granted;

20         2.  The court should decline to exercise supplemental jurisdiction over plaintiff's

21  state law negligence claims;

22         3.  Plaintiff's March 8, 2006 motion for summary judgment be denied.

23         These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen**

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

2  failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4  DATED:  August 16, 2006.

5

6  _____
   UNITED STATES MAGISTRATE JUDGE

7

8  001
   fraz0115.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26